915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Basilisa RODRIGUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1039.
 United States Court of Appeals, First Circuit.
 Sept. 11, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico Juan M. Perez-Gimenez, District Judge.
 Rafael Lizardi Pineiro on brief, for plaintiff-appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Thomas D. Ramsey, Assistant Regional Counsel, Department of Health and Human Services, on brief, for defendant-appellee.
 D.P.R.
 AFFIRMED.
 Before BREYER, Chief Judge, and LEVIN H. CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The claimant, Basilisa Rodriguez, has appealed a district court order affirming a decision of the Secretary of Health and Human Services (the Secretary) which denied the claimant's application for disability insurance benefits under the Social Security Act, 42 U.S.C. Sec. 401 et seq., (the Act). We affirm.
 
 
 2
 The claimant applied for benefits on July 3, 1985 alleging a disabling condition of chronic bronchial asthma, nasal allergy, and arthritis affecting her neck, arms and legs, with an onset date of October 26, 1984. Record (hereinafter R.) at 76. From an interview report, also dated July 3, 1985, it appears that the claimant also alleged disability due to anxiety and poor memory. R. at 98. An administrative law judge (ALJ) determined that the claimant has severe chronic bronchial asthma, chronic rhinitis[1] and a mild depressive disorder, that her residual functional capacity for the full range of light work is reduced by environmental restrictions precluding exposure to irritants, gases or strong odors, that she is unable to perform her past relevant work as a sewing machine operator because that job included exposure to the irritants she should avoid, but that, nonetheless, there are a significant number of sedentary jobs in the national economy which she could perform, such as packer. R. at 30-32. The ALJ, therefore, found the claimant not disabled. R. at 32. The ALJ's decision became the final decision of the Secretary by virtue of the Appeals Council's denial of the claimant's request for review. The district court affirmed the Secretary's decision.
 
 
 3
 On appeal, the claimant raises numerous grievances, which we address seriatim.
 
 
 4
 1. The claimant complains that much of the evidence was not considered by the ALJ. A reading of the ALJ's decision reveals that that is simply not so. The claimant says that the only medical evidence "expressly evaluated" by the ALJ were two reports by Dr. Diego L. Coira and a State Insurance Fund pulmonary function test. An ALJ is not required to expressly refer to each document in the record, piece-by-piece. He or she may summarize the medical findings reported there. The ALJ has done so in this case and our review of the record indicates that this evaluation was done accurately and without significant omissions. Moreover, the ALJ cited to the medical exhibits in the record which supported his recitation of the evidence presented. The particular items to which the claimant refers and suggests were not given consideration essentially can be grouped into three categories.
 
 
 5
 First, to the extent that the handwritten notes of Dr. DeJesus, R. at 336-41, and Dr. Santiago, R. at 256-60, are legible, their assessments appear consistent with that of the ALJ's expressed conclusion; that is, the claimant has bouts of bronchial asthma which require hospitalization, but, in between such, her condition is controlled by medication. R. at 29. Similarly, the reports of Dr. Santiago, R. at 188,[2] and Dr. Totti, R. at 246-55, are consistent with this conclusion. The claimant refers only to the first two pages of Dr. Totti's August 3, 1985 report in complaining of its omission from express comment by the ALJ. Those pages recite claimant's statements to Dr. Totti of daily attacks, six hospitalizations, and ten emergency room visits in one year. The ALJ was absolutely correct in stating, however, that the records submitted only indicate two hospital admissions in 1984, two in 1985, and one each in 1986 and 1987.[3] Nor do we find record support of the alleged ten emergency room visits. Further, the remainder of Dr. Totti's report recites that a spirometry[4] test revealed "mild obstruction to airflow with a response to inhaled bronchodilators", R. at 248, an x-ray with no evidence of cardiopulmonary disease, R. at 252, and claimant's range of motion within normal limits, R. at 253-55.
 
 
 6
 Second, the claimant complains that the ALJ did not expressly evaluate an additional report of Dr. Coira, apparently that of October 15, 1987, R. at 357-61, and a report of Dr. DeJesus of November 5, 1987, R. at 352-56. This complaint is specious. Claimant's counsel submitted these reports to the Appeals Council after the ALJ's decision. R. at 23-24.
 
 
 7
 Third, the claimant faults the ALJ for not specifically mentioning the psychiatric report of Dr. Miguez. R. at 266-68. The claimant was referred to Dr. Miguez by the Secretary. His bottom line diagnostic impression was "major depression-recurrent", and poor adaptive functioning with impairment in occupational functioning and in social relations. R. at 268. Yet, as pointed out by a review examiner, Pedro Garcia, Ph. D., R. at 117, this impression seems more stark than the underlying findings of Dr. Miguez themselves, and contradicted by other record information. For example, in his report, Dr. Miguez states that the claimant appeared to be in moderate distress and her facial expression appeared anxious, depressed, tearful and tense. R. at 267. Nonetheless, the report also states that she established good contact with Dr. Miguez and was warm, frank, accessible, alert, in good contact with reality, coherent, relevant and logical. R. at 267-68. She reported that relations with neighbors are good. R. at 267. The household chores and shopping are done by her daughter, but she performs light activities like taking care of plants and pets and her own personal needs. Id. Her concentration and attention were poor, but, in general, she functions at a regular intellectual level. R. at 268. There was no impairment of memory for remote, past and recent events, although her immediate retention and recall abilities were impaired. Id. Her judgment is fair and she is able to handle her funds. Id. We do not conclude that the ALJ's failure to address Dr. Miguez's report warrants reversal or remand. We note that the ALJ, in fact, expressly discussed the notes of Dr. Coira, claimant's treating psychiatrist, and in that discussion outlined the underlying support for his conclusion that the claimant has a mild depressive disorder. R. at 30[5] We do not believe that Dr. Miguez's report threatens the substantial basis for that conclusion.
 
 
 8
 2. The claimant criticizes as incomplete the hypothetical questions posed by the ALJ to the vocational expert (VE) at the hearing. The ALJ initially posed hypothetical questions regarding the availability of jobs that the claimant could perform based solely on the claimant's physical condition, i.e., her asthmatic/allergic condition restricting exposure to dust, fumes, gases, etc.... R. at 65-69. Claimant's counsel then was permitted to add the conditions of arthritis and depression to the hypothetical. R. at 69-71. Finally, the ALJ sought to clarify whether any answer would be different if the depressive disorder was a reactive result to the loss of a job. R. at 71-72. (There was evidence in this case that the claimant stopped working, not because of her asthmatic/allergic condition but rather she was laid off due to economic conditions at the factory and that her depression resulted from, or was exacerbated by, the lay-off. R. at 71-73.) Contrary to the claimant's suggestion, the hypotheticals, in total, presented a complete picture of claimant's alleged disabling conditions. The claimant's true complaint, it seems, is that the ALJ did not accept that the claimant's depressive disorder was as disabling as the claimant's counsel proposed in his hypothetical. The ALJ's conclusion, however, that claimant has a mild depressive disorder, not significantly restricting her residual functional capacity, as discussed supra, was sufficiently supported.[6]
 
 
 9
 3. We reject claimant's assertion that her mental impairment "undoubtedly," brief at 28, meets or equals Listing 12.04, Affective Disorders, of 20 C.F.R. Part 404, Subpart P, Appendix 1. This assertion does not merit discussion beyond pointing out that Listing 12.04 has two subparts, A & B. To satisfy subpart A(1), there must be evidence of at least 4 out of 9 symptoms and to satisfy subpart B, there must be evidence of at least 2 out of 4 types of functional restrictions. The claimant recites that she has satisfied 3 (rather than the required 4) factors of Listing 12.04A(1). Moreover, she does not support any of her claims of satisfying 12.04A(1) and (B) with citation to particular parts of the record. Finally, we note that the psychiatric review technique form completed by a review examiner, Pedro Garcia, Ph.D., indicates that the claimant does not meet or equal Listing 12.04. R. at 118-27.
 
 
 10
 4. After the hearing before the ALJ, but before the ALJ's decision, claimant's counsel submitted to the ALJ for his consideration medical records of claimant's hospitalization for an asthmatic attack, which occurred subsequent to the hearing. R. at 342-51. (The ALJ, in fact, reviewed this submission since he made note of the fact that the claimant was hospitalized once in 1987. R. at 29.) After the ALJ's decision, claimant's counsel sought review of that decision by the Appeals Council and submitted, along with the request for review, further medical reports of Dr. DeJesus, R. at 352-56, and Dr. Coira, R. at 357-61. The claimant now alleges that the ALJ and the Appeals Council should have provided this later-submitted evidence to the VE and sought his opinion.
 
 
 11
 Our response is three-fold. First, claimant's counsel never requested that the VE be asked to reconsider his opinion in light of this subsequent evidence. Second, claimant's counsel, even now, has not suggested any specific hypothetical questions which the VE should have been asked based on this subsequent evidence. Surely, counsel has some obligation to point out, in more than generalities, his contentions regarding the potential impact of subsequent evidence on a vocational opinion. Third, assuming without deciding that the ALJ and/or the Appeals Counsel should have, sua sponte, sought the VE's views, in light of this later-submitted evidence, (a supposition we, in no way, want to suggest is a requirement in all, or even many, cases), we see no need to remand on this point. This later-submitted evidence is not significantly different from that submitted previously, of which the ALJ and the VE were aware.
 
 
 12
 The subsequent hospitalization (the only one in 1987) did not impact on the claimant's ability to meet or equal Listing 3.03B, see footnote 3, and, in no way, challenges the ALJ's supported conclusion that, between hospitalizations, the claimant's asthma condition is controlled with medication.
 
 
 13
 The report of Dr. DeJesus, essentially can be summarized by its statement that the claimant "presents a type of asthma that, although improves with medications, frequently exacerbates on being exposed to allergens, irritating substances and nervous decompensation." R. at 352-A. This opinion, plus Dr. DeJesus' residual functional capacity (RFC) assessment which opines that claimant's capacity for sitting is unaffected, although her asthma can be exacerbated by "cold air hyperventilation" such that her capacity for standing/walking, lifting/carrying, and climbing is affected, as well as presenting environmental restrictions, (R. at 354-56), in no way contradicts the VE's opinion that the claimant can do sedentary work in allergenic-free environments such as a packer in the electronic and pharmaceuticals industries. R. at 30; 65-67.
 
 
 14
 At the hearing, claimant's counsel posed a hypothetical to the VE which included, as a factor, Dr. Coira's opinion that the claimant is depressed and has problems with concentration. R. at 70. Dr. Coira's report, R. at 357-61, submitted to the Appeals Council, after the ALJ's decision, is consistent with his earlier reports and progress notes, which were considered by the ALJ. We have concluded, supra, at footnote 5, that the weight given Dr. Coira's opinion was appropriate and sufficiently supported. This later-submitted report does not change our view, nor do we find error in failing to submit this subsequent report to the VE for evaluation.
 
 
 15
 We also note that there is no apparent reason for counsel's failure to present these last reports of Dr. DeJesus and Dr. Coira prior to the hearing or at least in advance of the ALJ's decision. Although both were dated after the ALJ's decision and reported that the claimant was continuing as a patient, they are essentially a chronology of claimant's treatment. They do not evidence any significant change or deterioration in claimant's condition since the date of the hearing.
 
 
 16
 5. Finally, the claimant complains that the time elapsed from the date of her application for disability benefits, July 3, 1985, through the district court's affirmance on December 6, 1989 of the Secretary's denial of that application, was an unreasonable delay which violated statutory and constitutional rights to due process and equal protection. Some delay is inherent in the "unusually protective four-step [administrative] process for the review and adjudication of disputed claims." Heckler v. Day, 467 U.S. 104, 106 (1984). We have reviewed the chronology of administrative review in this case. The longest period of delay in this process was the nine-month period between the hearing and the decision by the ALJ. We also note that part of that delay fairly must be attributed to the claimant who requested additional time after the hearing to submit further evidence. R. at 42; 74; 292-351. Viewing the period of time in which the case was pending in the agency[7] in total, we do not find that it approaches "the kind of egregious delay that arguably might constitute a violation of due process." Reagan v. Secretary of Health and Human Services, 877 F.2d 123, 126 (1st Cir.1989). We further conclude that the additional period of time during which the case was pending in the district court does not, by itself or in conjunction with any administrative delay, warrant a different conclusion. Nor do we find merit in the claimant's otherwise further undeveloped claims of violations of statutory[8] and equal protection rights.
 
 
 17
 Moreover, the claimant suggests no meaningful harm which has occurred, even assuming that there was an unreasonable delay in adjudicating her claim. Since we have concluded that she is not entitled to disability benefits for the period adjudicated with respect to this claim, she cannot argue that during this period she was without benefits to which she was entitled. And, it would seem that we would be without authority to award any sort of relief. The claimant suggests harm in that her insured status expired as of December 31, 1989. However, as the government points out, that does not preclude her from filing a new application for disability benefits, if her condition, subsequent to the period of time adjudicated here and prior to December 31, 1989, warranted it.
 
 
 18
 For all of the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 Rhinitis is inflammation of the mucous membrane of the nose. The Sloane-Dorland Annotated Medical-Legal Dictionary 619 (1987)
 
 
 [2]
 The claimant's related argument, that these reports and notes of Dr. DeJesus and Dr. Santiago should be given more weight because these doctors are or were claimant's treating physicians is likewise easily dismissed. First, this circuit has "repeatedly refused to adopt any per se rule to that effect." Gonzalez-Ayala v. Secretary of Health and Human Services, 807 F.2d 255, 256 (1st Cir.1986). Second, in any event, the ALJ, in fact, gave this evidence its full weight. The ALJ's conclusion is consistent with, and supported by, this evidence
 
 
 [3]
 The claimant is wrong, therefore, in claiming, at page 27 of her brief, that her asthma condition meets or equals Listing 3.03B of 20 C.F.R. Part 404, Subpart P, Appendix 1. Listing 3.03B finds asthma to be a per se disabling condition when there are:
 Episodes of severe attacks [defined at 3.00C as prolonged episodes lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room], in spite of prescribed treatment, occurring at least once every 2 months or on an average of at least 6 times a year, and prolonged expiration with wheezing or rhonchi on physical examination between attacks.
 Emphasis added.
 
 
 [4]
 Spirometry is the measurement of the breathing capacity of the lungs. The Sloane-Dorland Annotated Medical-Legal Dictionary 660 (1987)
 
 
 [5]
 As with Dr. DeJesus and Dr. Santiago, supra, at footnote 2, the claimant also complains that insufficient weight was given to Dr. Coira's reports, R. at 261-65, 284, as a treating physician, in this instance, a treating psychiatrist. We reiterate what we stated there concerning this circuit's consideration of such reports, Gonzalez-Ayala v. Secretary of Health and Human Services, 807 F.2d at 256. We further state that the ALJ discussed Dr. Coria's findings, R. at 30, in particular, his progress notes, R. at 322-35, which appear to be contemporaneously written at the time of each treatment session and which extend beyond the date of his report at R. 261-65. (The document at R. 284 merely recites that claimant has been his patient for eleven months and contains unelaborated statements of diagnosis, prognosis, and treatment. We agree with the ALJ that this document is of little informative value. R. at 43.) The ALJ explained why he discounted the existence of any disabling symptomatology, including memory problems based on the progress notes themselves, and other record evidence. We conclude that the weight given these progress notes was appropriate and sufficiently supported by the record
 
 
 [6]
 We further find unpersuasive claimant's contention that, despite the ALJ's statements to the contrary, the ALJ failed to consider the claimant's impairments in combination
 
 
 [7]
 In addition to the time elapsed between the hearing and the ALJ decision, the time elapsed between the filing of the application and the initial denial was 5+ months; between the request for reconsideration and denial was 5+ months; the request for a hearing and that hearing was 3+ months; and the request for review of the ALJ decision and the denial by the Appeals Council was 3 months. We also note that the claimant submitted additional evidence to the Appeals Counsel for its consideration. R. at 352-65
 
 
 [8]
 The Act does not provide any statutory right to mandatory time limits with respect to hearings held or decisions made, but only a right to a hearing within a reasonable time. Heckler v. Day, 467 U.S. at 108-09 & n. 10; see also Crosby v. Social Security Administration of United States, 796 F.2d 576, 579-80 (1st Cir.1986). We do not find this reasonable time requirement violated here